Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

Attorneys for Plaintiff, STEPHANIE ST. MARY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE ST. MARY, on behalf of herself and all similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> QUEERTY, INC., a California corporation, <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1) Cal. Penal Code § 631 <br> 2) 18 U.S.C. § 2511(1)(a) <br> 3) Cal. Bus. & Prof. Code § 17200, *et seq.* <br> 4) Cal. Constitution Art. I § 1 <br> 5) Intrusion Upon Seclusion <br> 6) Unjust Enrichment |

1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1.   Plaintiff STEPHANIE ST. MARY ("Plaintiff") files this class action complaint on behalf of herself and all others similarly situated, against Defendant QUEERTY, INC., a California corporation ("Defendant"), and alleges as follows:

## I.   NATURE OF THE ACTION

2.   This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.lgbtqnation.com (the "Website"), an online LGBTQ+ news publication that Defendant operates and provides for public access and use.

3.   During her use of the Website, Plaintiff navigated to multiple pages addressing sensitive personal subject matter, including pages addressing gender-affirming medical care, queer spirituality and identity, and other LGBTQ+ topics, unaware that Defendant was causing and permitting third parties to intercept the contents of her communications and to associate those contents with persistent, cross-session user identifiers.

4.   Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page URLs identifying what she was reading, the page titles identifying in plain English the subject matter of those pages, the referrer URLs reflecting prior navigation paths, and persistent identifiers tying those communications to Plaintiff across browsing sessions.

5.   As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technologies on the Website that intercept the contents of users' electronic communications, including the page URLs and page titles reflecting in human-readable terms what users are reading on the Website, and transmits those contents to multiple distinct third-party entities for those third parties' independent commercial use.

6.   Defendant deploys these interception technologies in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Defendant has done so from prior to the beginning of the class period in this case and continuously through to today and is, on information and belief,

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

continuing to do so. Defendant's conduct also gives rise to additional state-law claims under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; the right to privacy under Article I, Section 1 of the California Constitution; the common law tort of intrusion upon seclusion; and the doctrine of unjust enrichment.

7. Plaintiff personally used the Website during the class period and preserved an HTTP archive file (commonly known as a HAR file) of her own browsing session. Counsel caused a technical investigation to be conducted that replicated URLs and user flows presented in Plaintiff's HAR file and that documented the third-party tracking transmissions described in this Complaint. The figures and screenshots reproduced below are from that investigation and are included herein as illustrative examples of how the Website's tracking technologies operated when Plaintiff visited the Website.

## II.   GENERAL ALLEGATIONS

8. A web tracker is a tracking mechanism embedded in a website that monitors user interactions and transmits data to third-party servers. Web trackers may take the form of a transparent 1x1 image, a JavaScript snippet, or an analytics pixel that activates automatically when a webpage is loaded or when a user performs a tracked action.

9. When triggered, trackers cause the user's browser to transmit data to third-party servers, including the contents of the user's communications with the host website such as page URLs identifying what the user is reading, page titles identifying the subject matter of those pages, and referrer URLs reflecting prior navigation. The trackers also transmit persistent user identifiers that tie those communications to a specific user across browsing sessions.

10. When users visit the Website, Defendant causes tracking technologies to be embedded in visitors' browsers, including the following (collectively, the "Trackers"):

- The Comscore Tracker
- The Taboola Tracker

11. The Trackers are operated by distinct third parties: Comscore, Inc. (as to the Comscore Tracker at sb.scorecardresearch.com) and Taboola, Inc. (as to the Taboola

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Tracker at trc.taboola.com). Each operates independently of Defendant and of the other Tracker and pursues its own commercial purposes for the data it receives. Both Comscore and Taboola are registered California data brokers under the California Data Broker Registration Act, Cal. Civ. Code § 1798.99.80 et seq.

12.     The third parties who operate the above-listed Trackers use the intercepted contents of users' communications collected via the Website for their own independent commercial purposes, including audience measurement, behavioral profiling, cross-site tracking, content-recommendation targeting, audience monetization, and data syndication. Those purposes extend beyond Defendant's own operational needs and reflect the business models of each independent third-party operator.

13.     Defendant knowingly embeds and deploys the Trackers on the Website and configures them to execute automatically within users' browsers each time a user loads a page of the Website, without any user interaction or affirmative action by the user. The interception of users' communications by the Trackers is the direct, intended, and foreseeable consequence of Defendant's deliberate configuration of the Website.

14.     The third-party tracking code executes contemporaneously with each page load initiated by Plaintiff's browser. The page-load process for a modern webpage is not a single instantaneous event; it consists of many successive steps that the browser performs in sequence and in parallel, including the initial HTTP request and response for the page URL, the parsing of the returned HTML markup, the fetching and execution of embedded scripts (including the Trackers), the fetching of stylesheets, images, fonts, and other linked resources, and the rendering of the page to the user. During that same page-load process, before the page-load process completes, the Trackers cause the browser to issue separate, parallel outbound requests to third-party endpoints carrying the contents of Plaintiff's communications with the Website and persistent identifiers tied to Plaintiff. The interception of Plaintiff's communications by the Trackers is contemporaneous with, and occurs during, the transmission of those communications to Defendant.

4

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

15. Web tracking pixels typically operate by means of the standardized "async" attribute on HTML script elements. Under the HTML Living Standard maintained by the Web Hypertext Application Technology Working Group, when a script element carries the async attribute, "the classic script will be fetched in parallel to parsing."[1] An async script is therefore loaded and executed during the page-load process and does not wait for that process to finish.

16. Each of the Trackers deployed on the Website is loaded into Plaintiff's browser asynchronously, and the operators of each Tracker openly admit as much in their own published installation documentation.

17. Comscore's published implementation documentation describes its standard measurement tag as an "asynchronous tag" that handles part of "the processing of the webpage" without holding up "the loading of other elements on the page." Comscore's published tag code dynamically creates an external script element, sets that script element to load asynchronously via the directive "s.async = true," and directs the browser to request Comscore's tracking-library script beacon.js from scorecardresearch.com.[2]

18. Taboola openly publishes a base-pixel installation snippet that website operators are instructed to install in the <head> element of each page on the website. That snippet (a) appears in the webpage's <head> element; (b) queues a "page_view" event immediately; (c) creates an additional script element; (d) sets that script element to load asynchronously via the directive "t.async = 1"; and (e) separately requests

---

[1] WHATWG, HTML Living Standard § 4.12.1 ("The script element") (defining behavior of the async attribute on external classic scripts), can be found online at https://html.spec.whatwg.org/multipage/scripting.html#attr-script-async (last visited June 20, 2026).

[2] Comscore, Tag Code and Tag ID parameters (describing the "comScore Asynchronous Tag"), can be found online at https://direct-support.comscore.com/hc/en-us/articles/360007162413-Tag-Code-and-Tag-ID-parameters (last visited June 20, 2026); see also Comscore, How should the comScore tag be structured for Facebook Instant Articles (publishing the standard async tag code), can be found online at https://direct-support.comscore.com/hc/en-us/articles/360002101194-How-should-the-comScore-tag-be-structured-for-Facebook-Instant-Articles (last visited June 20, 2026).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Taboola's tracking-library script tfa.js from cdn.taboola.com. Taboola further publishes that, "[w]ith standard web pages, each time a page is loaded, a 'page_view' event is triggered for that URL."[3]

19.  This asynchronous execution occurred in practice during Plaintiff's visit: each Tracker fired its first outbound request to its respective third-party endpoint during the page-load process for the pages Plaintiff visited, before the page-load process had completed.

20.  During the page-load process, the Comscore Tracker dispatches outbound GET requests to sb.scorecardresearch.com and the Taboola Tracker dispatches outbound GET requests to trc.taboola.com. Each of those tracker requests fires automatically, without any user interaction or affirmative action, and is dispatched during the page-load process before the page-load process completes, carrying the contents of the user's communications with the Website to the third-party operators of the Trackers.

21.  Plaintiff and the Class Members did not consent to the installation, execution, embedding, or injection of the Trackers on their devices, did not consent to the contents of their communications with the Website being transmitted to the third parties operating the Trackers, and did not consent to the use or commercial exploitation of those contents by Defendant or by the third parties.

22.  Generalized references herein to users, visitors, and consumers expressly include Plaintiff and the Class Members.

### III.  PARTIES

23.  Plaintiff STEPHANIE ST. MARY is a California citizen residing in Los Angeles County, California, and has an intent to remain there. Plaintiff was in California when she visited the Website, which occurred on multiple occasions during the class period including but not limited to on May 14, 2026. The allegations set forth herein

---

[3] Taboola, Add the base pixel manually, can be found online at https://developers.taboola.com/pixel/docs/add-the-base-pixel-manually (last visited June 20, 2026); see also Taboola, Add the base pixel to an SPA, can be found online at https://developers.taboola.com/pixel/docs/add-the-base-pixel-to-an-spa (last visited June 20, 2026).

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

concerning the conduct of Defendant pertain to and are based on Plaintiff's use of the Website in California.

24.     Defendant QUEERTY, INC. is a California corporation. Queerty, Inc. owns, operates, and controls the Website and is responsible for the configuration, embedding, and deployment of the tracking technologies described herein.

## IV.   JURISDICTION AND VENUE

25.     This Court has personal jurisdiction over Defendant because Defendant is a California corporation and is therefore subject to general personal jurisdiction in California. Defendant additionally maintains continuous and systematic contacts with this District through, among other things, its operation of the Website to and for California residents and its commercial monetization of California residents' browsing communications.

26.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the laws of the United States, namely the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a).

27.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy.

28.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because at least one Class Member is a citizen of a State different from Defendant, the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and there are at least 100 Class Members.

29.     Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this District, a substantial part of the events giving rise to the claims occurred in this District, and Defendant regularly transacts business in this District.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## V.     FEDERAL AND STATE PRIVACY LAWS

### 1. The California Invasion of Privacy Act

30.     The California Invasion of Privacy Act ("CIPA") is a legislative measure designed to safeguard the privacy rights of California residents in the face of advancing technology. Enacted in 1967 and codified at Cal. Penal Code §§ 630-638, CIPA established a comprehensive framework to protect the privacy of personal communications.

31.     Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the Legislature's intent. CIPA's reach extends to electronic communications transmitted over the Internet because the statutory definitions are technology-neutral and the Legislature has repeatedly affirmed CIPA's adaptability to new modes of communication.

32.     CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that "the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties."

33.     Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory damages per violation, or three times the amount of actual damages, whichever is greater, pursuant to Cal. Penal Code § 637.2(a)(1).

### 2. The Federal Wiretap Act

34.     The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits any person from intentionally intercepting any wire, oral, or electronic communication. 18 U.S.C. § 2511(1)(a).

35.     The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the Wiretap Act's protections to electronic communications, defined to include any transfer of signs, signals, writing,

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system. 18 U.S.C. § 2510(12).

36.     A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520 and is entitled to recover the greater of actual damages or statutory damages, punitive damages where appropriate, and reasonable attorney's fees and litigation costs.

## VI.     SPECIFIC ALLEGATIONS

37.     During her use of the Website, and as reflected in her HAR file, Plaintiff navigated to the following URLs, unaware that Defendant was causing and permitting Third Parties to intercept the content of her communications:

- the article "Federal judge slams DOJ's attempt to intimidate gender-affirming hospital" at www.lgbtqnation.com/2026/05/federal-judge-slams-dojs-attempt-to-intimidate-gender-affirming-hospital/;
- the article "Even if you're not religious, your radical queer soul is still divine" at www.lgbtqnation.com/2026/05/even-if-youre-not-religious-your-radical-queer-soul-is-still-divine/;
- the article on a homophobic dig at Anderson Cooper at www.lgbtqnation.com/2025/06/makes-homophobic-dig-at-anderson-cooper-a-day-after-he-fled-to-a-shelter-live-on-air/;
- the article "White House website posts pic of trans woman in response to critics of East Wing" at www.lgbtqnation.com/2025/10/white-house-website-posts-pic-of-trans-woman-in-response-to-critics-of-east-wing/.

38.     Plaintiff alleges on information and belief that the tracking mechanisms described below operated on the Website during Plaintiff's visit in substantially the same manner as documented in the independent technical analysis referenced herein, and that the contents of Plaintiff's communications with the Website, including the page URLs Plaintiff accessed, the page titles identifying the subject matter of those pages, the

9

referrer URLs reflecting Plaintiff's prior navigation, and the persistent identifiers tied to Plaintiff, were transmitted to each of the Trackers during the page-load process for each page Plaintiff visited.

### 1.   The Comscore Tracker

39.    Defendant embedded and deployed a Comscore tracking mechanism on the Website. The Comscore mechanism fires automatically during the page-load process and transmits data to sb.scorecardresearch.com, including, in a single request, the full page URL of each page the user visits (transmitted in a named payload parameter "c7"), the page title of each page (transmitted in plain English in a named payload parameter "c8"), and a persistent Comscore user identifier ("UID") carried in the outbound Cookie header.

40.    Figure 1 is a Fiddler Classic raw request capture showing an outbound request transmitted to Comscore at sb.scorecardresearch.com. The capture reflects the simultaneous transmission, in a single request, of the page URL in the "c7" parameter, the plain-English page title in the "c8" parameter, and the Comscore persistent "UID" identifier in the outbound Cookie header.

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 1**



41.    Comscore's servers at sb.scorecardresearch.com returned responses to the Comscore requests, including HTTP responses confirming that the contents of the user's communications with the Website had been received by Comscore. Those responses set persistent Comscore identifier cookies (including the "UID" and "XID" cookies) on the .scorecardresearch.com domain with multi-year expiration dates, thereby enabling Comscore to re-identify the same user across sessions and across other websites within Comscore's measurement network.

42.    Comscore and its operators used the intercepted contents of Plaintiff's communications with the Website, including the page URLs and page titles, for Comscore's own commercial purposes, including audience-measurement, cross-site behavioral profiling, and the construction and syndication of audience-classification data to Comscore's ecosystem of media-measurement and advertising partners.

43.    Comscore is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that received those communications in transit between Plaintiff's browser and Defendant.

11

### *2. The Taboola Tracker*

44.     Defendant embedded and deployed a Taboola tracking mechanism on the Website, operated by Taboola through its content-recommendation and audience-targeting platform. The Taboola mechanism fires automatically during the page-load process and transmits data to trc.taboola.com, including, in a single request, the full page URL of each page the user visits (transmitted in a named payload parameter "u") and a persistent Taboola user identifier ("t_gid") carried in the outbound Cookie header.

45.     Figure 2 is a Fiddler Classic raw request capture showing an outbound request transmitted to Taboola at trc.taboola.com. The capture reflects the simultaneous transmission, in a single request, of the complete page URL in human-readable terms in the "u" parameter and the Taboola persistent "t_gid" identifier in the outbound Cookie header.

**Figure 2**

46.     Taboola's servers at trc.taboola.com returned responses to the Taboola requests, including HTTP responses confirming that the contents of the user's communications with the Website had been received by Taboola. Those responses set

12

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

persistent Taboola identifier cookies (including the "t_gid" and "t_pt_gid" cookies) on the .taboola.com domain with one-year expiration dates, thereby enabling Taboola to re-identify the same user across sessions and across other websites within Taboola's recommendation and advertising network.

47.    Taboola and its operators used the intercepted contents of Plaintiff's communications with the Website, including the page URLs, for Taboola's own commercial purposes, including content-recommendation targeting, audience identity resolution, and downstream syndication to Taboola's ecosystem of advertising partners.

48.    Taboola is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that received those communications in transit between Plaintiff's browser and Defendant.

### 3.    Persistent Identifiers Stored in the Browser

49.    Figure 3 is a Chrome DevTools Application panel capture showing the browser's cookie storage during the load of the Website. The capture reflects the persistent Comscore identifier cookies ("UID" and "XID") on the .scorecardresearch.com domain with multi-year expiration dates, and the persistent Taboola identifier cookies ("t_gid" and "t_pt_gid") on the .taboola.com domain with one-year expiration dates, all of which persist across browsing sessions and enable each tracker's operator to re-identify the same user on subsequent visits to the Website and to other websites within each tracker's network.

/ / /

/ / /

/ / /

13

**Figure 3**



## VII.   CLASS ALLEGATIONS

50.    Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members"), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). The Class is defined as follows:

All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests, were intercepted by any of the Trackers during the class period.

51.    **NUMEROSITY:** Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not millions, based on the reach and traffic of the Website. The Class is so numerous that joinder of all members is impracticable.

52.    **COMMONALITY:** Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual Class Members, including: (a) whether Defendant intentionally embedded and configured the Trackers to intercept and transmit the contents of users' communications with the Website; (b)

14

whether the URL contents of users' HTTP requests to the Website constitute "contents" of communications within the meaning of CIPA and the Federal Wiretap Act; (c) whether the operators of the Trackers are third parties with respect to communications between users and Defendant; (d) whether Defendant obtained the consent of users before causing the interception of those communications; (e) whether Defendant's conduct violates Cal. Penal Code § 631, 18 U.S.C. § 2511(1)(a), and Cal. Bus. & Prof. Code § 17200; and (f) the appropriate measure of damages.

53.    **TYPICALITY:** As a person who visited the Website and whose URL contents were intercepted by the Trackers, Plaintiff is asserting claims typical of those of the Class Members. Plaintiff's claims arise from the same course of conduct that gives rise to the claims of the Class Members and are based on the same legal theories.

54.    **ADEQUACY:** Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained competent and experienced counsel in complex class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

55.    **SUPERIORITY:** A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable; many Class Members would not seek relief individually due to the relatively modest size of individual recoveries compared with the burden of individual litigation; and class treatment will allow uniform adjudication of common issues, conserve judicial resources, and provide consistent rulings.

## VIII.  <u>FIRST CAUSE OF ACTION</u>

### <u>Violation of California Invasion of Privacy Act (Cal. Penal Code § 631)</u>

### By Plaintiff and the Class Members Against Defendant

56.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

57.    Plaintiff brings this cause of action on behalf of herself and the Class.

58.    California Penal Code § 631(a) prohibits any person from willfully and

15

without the consent of all parties to the communication, or in an unauthorized manner, reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable; or aiding, agreeing with, or conspiring with another to do the same.

59.    The full URLs of Plaintiff's and Class Members' HTTP requests to the Website constitute the "contents" of those communications within the meaning of § 631(a) because they reveal the substance, purport, and meaning of what the user is reading on the Website, including, in this case, articles addressing gender-affirming medical care, queer spirituality, anti-LGBTQ commentary, and trans visibility. The page titles transmitted in plain text to the Trackers likewise constitute "contents" because they communicate in human-readable terms the subject matter of each page the user accessed.

60.    Defendant intentionally configured the Website to transmit Plaintiff's and Class Members' URL contents and page-title contents to the Trackers while those communications were in transit between Plaintiff's browser and Defendant's servers, without the consent of Plaintiff or Class Members. By doing so, Defendant aided, agreed with, and conspired with the operators of the Trackers, Comscore and Taboola, to cause the unlawful interception of those communications.

61.    Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of statutory damages of $5,000 per violation or three times the amount of actual damages, pursuant to Cal. Penal Code § 637.2(a)(1), as well as injunctive relief and reasonable attorney's fees and costs.

## IX.    SECOND CAUSE OF ACTION

### Violation of the Federal Wiretap Act (18 U.S.C. § 2511(1)(a))

### By Plaintiff and the Class Members Against Defendant

62.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

63.    Plaintiff brings this cause of action on behalf of herself and the Class.

64.    18 U.S.C. § 2511(1)(a) prohibits any person from intentionally intercepting

16

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

any wire, oral, or electronic communication. An "interception" for purposes of the Federal Wiretap Act includes the acquisition of the contents of an electronic communication through the use of an electronic, mechanical, or other device while the communication is in transit.

65.    The full URLs of Plaintiff's and Class Members' HTTP requests to the Website are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8) because they reveal the substance, purport, and meaning of those communications. The page titles transmitted to the Trackers in plain text likewise constitute contents.

66.    Defendant intentionally configured the Website to transmit Plaintiff's and Class Members' URL contents and page-title contents to each Tracker, Comscore and Taboola, while those communications were in transit between Plaintiff's browser and Defendant's servers, thereby causing the interception of those communications by third parties.

67.    Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520, including the greater of actual damages plus any profits made by Defendant through the unlawful interception, or statutory damages of $100 a day for each day of violation or $10,000, whichever is greater; punitive damages where appropriate; and reasonable attorney's fees and litigation costs.

## X.    THIRD CAUSE OF ACTION
### Violation of the Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

**By Plaintiff and the Class Members Against Defendant**

68.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

69.    Plaintiff brings this cause of action on behalf of herself and the Class.

70.    California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant's conduct alleged herein

17

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

constitutes unlawful and unfair business acts and practices within the meaning of § 17200.

71. Defendant's conduct is unlawful. By facilitating the interception of the contents of Plaintiff's and Class Members' electronic communications with the Website without their consent, Defendant has violated CIPA, Cal. Penal Code § 631(a), and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Each of those statutory violations constitutes an independent predicate for liability under § 17200.

72. Defendant's conduct is also unfair. Defendant covertly transmitted Plaintiff's and Class Members' URL contents and page-title contents to third parties for those third parties' commercial benefit, without disclosing the conduct, without obtaining consent, and without offering Plaintiff or Class Members any reasonable means of avoiding the interception. The harm to consumer privacy substantially outweighs any legitimate business justification.

73. Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's conduct. Browsing data is a thing of value with established markets and exchange rates; Defendant and the third-party Trackers monetized Plaintiff's and Class Members' browsing data; and Plaintiff and Class Members were deprived of the value of that data without their consent and without compensation.

74. Plaintiff and Class Members provided their browsing data as implicit consideration for access to the Website, a data-for-services arrangement that Defendant exploited without disclosing the scope of the third-party interceptions.

75. Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing its unlawful and unfair conduct, restitution, and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

/ / /

18

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## XI.    FOURTH CAUSE OF ACTION

**Violation of the California Constitution, Right to Privacy (Article I, Section 1)**

**By Plaintiff and the Class Members Against Defendant**

76.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77.    Plaintiff brings this cause of action on behalf of herself and the Class.

78.    Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. This constitutional right protects against unreasonable intrusions upon individuals' private affairs by both state and private actors.

79.    Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page URLs reflecting their browsing activity and the page titles reflecting the subject matter of the content they viewed. California law recognizes a substantial privacy interest in personal information that may reveal sensitive matters of individual concern, including information bearing on a person's sexual orientation, gender identity, and personal interests.

80.    Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting an LGBTQ+ news publication does not expect that the specific URLs identifying the articles the user read, together with the plain-English page titles identifying their subject matter, would be silently transmitted to independent third-party measurement and advertising companies and joined to persistent cross-session user identifiers.

81.    Defendant's conduct constitutes a serious invasion of that privacy. By deliberately embedding and configuring two third-party tracking mechanisms to intercept and transmit the contents of Plaintiff's and Class Members' electronic communications, including communications addressing sensitive LGBTQ+ subject matter such as gender-affirming medical care and queer identity, and by tying those

communications to persistent cross-session user identifiers, Defendant has invaded interests protected by the California Constitution in a manner that an ordinary, reasonable person would regard as highly offensive.

82.     As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of control over the contents of their electronic communications and loss of the privacy protections to which they are entitled under California law. Plaintiff and the Class are entitled to nominal damages and injunctive relief.

## XII.   FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against Defendant

83.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

84.     Plaintiff brings this cause of action on behalf of herself and the Class.

85.     The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a private place, conversation, or matter; and (2) an intrusion in a manner highly offensive to a reasonable person.

86.     Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding and configuring two third-party tracking mechanisms designed to capture the contents of those communications during the page-load process and transmit them to independent third parties for those third parties' commercial purposes.

87.     The intrusion is highly offensive to a reasonable person. Defendant covertly deployed tracking technologies that captured the specific content Plaintiff was reading and transmitted it to multiple third-party commercial entities for audience identity resolution, behavioral profiling, and downstream syndication, all without disclosing the scope of the third-party interceptions and without obtaining consent.

88.     As a result of Defendant's intrusion upon their seclusion, Plaintiff and Class

20

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Members have suffered harm, including loss of privacy in the contents of their electronic communications, loss of control over their personal information, and mental and emotional distress. Plaintiff and the Class are entitled to compensatory and nominal damages.

## XIII.  SIXTH CAUSE OF ACTION

### Unjust Enrichment

### By Plaintiff and the Class Members Against Defendant

89.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

90.   Plaintiff brings this cause of action on behalf of herself and the Class.

91.   Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances making it inequitable for the defendant to retain the benefit without compensating the plaintiff.

92.   Defendant received a benefit by permitting third parties to deploy their tracking technologies on the Website. In exchange for permitting such deployment, Defendant received monetary payments, analytics services, audience-identification services, and other valuable benefits from the operators of the Trackers, all of which were funded by the third-party operators' commercial exploitation of the intercepted contents of Plaintiff's and Class Members' communications with the Website.

93.   Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data has economic value, and Defendant's commercial monetization of that data through the Trackers deprived Plaintiff and Class Members of the value of their data without consent and without compensation.

94.   It is inequitable for Defendant to retain the benefits of its data-for-services arrangement without compensating Plaintiff and Class Members. Defendant did not obtain consent before causing the interception of Plaintiff's and Class Members' communications, and Defendant continued to monetize the intercepted data while concealing the scope of the third-party interceptions.

21

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

95.   Plaintiff and the Class seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

## XIV. PRAYER FOR RELIEF

96.   WHEREFORE, Plaintiff prays for the following:

1.   An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;

2.   An order declaring that Defendant's conduct violates Cal. Penal Code § 631(a), 18 U.S.C. § 2511(1)(a), Cal. Bus. & Prof. Code § 17200, et seq., Article I, Section 1 of the California Constitution, and the common law of intrusion upon seclusion and unjust enrichment;

3.   An order enjoining Defendant from continuing the conduct alleged herein;

4.   Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;

5.   Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of actual damages plus any profits made by Defendant through the unlawful interception or $100 a day for each day of violation or $10,000, whichever is greater;

6.   Punitive damages pursuant to 18 U.S.C. § 2520;

7.   Restitution pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;

8.   Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;

9.   Compensatory and nominal damages for intrusion upon seclusion;

10.   Restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;

11.   Prejudgment interest;

12.   Reasonable attorney's fees and costs; and

13.   Such other and further relief as the Court deems just and proper.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## DEMAND FOR JURY TRIAL

97.    Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated:   July 3, 2026          **NATHAN & ASSOCIATES, APC**


By: */s/ Reuben D. Nathan*
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

**LAW OFFICES OF ROSS CORNELL, APC**
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED